## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SABREEN GAD,

*Plaintiff,*

vs.

Case No. 12-2375-EFM

KANSAS STATE UNIVERSITY,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Sabreen Gad brings an employment discrimination claim on the basis of gender against Defendant Kansas State University.  This Court previously dismissed Plaintiff's claim finding that she failed to verify her charge before the Equal Employment Opportunity Commission ("EEOC") and thus the Court lacked jurisdiction to determine her claim.  The Tenth Circuit Court of Appeals reversed this Court's decision, finding that verification was non-jurisdictional and instead a condition precedent that could be waived.

Upon remand to this Court, the parties briefed the issue of whether Defendant or the EEOC waived the condition precedent of verification.  The substantive issue of whether Defendant discriminated against Plaintiff on the basis of her gender is also before the Court.  The Court finds that Defendant did not waive the requirement of verification, but the EEOC did.  Plaintiff, however, fails to direct the Court to any evidence establishing a question of fact as to

her gender discrimination claim.   Thus, the Court grants Defendant's Motion for Summary Judgment (Doc. 28).

## I.      Factual and Procedural Background[1]

*Discrimination Facts*

Plaintiff claims that Defendant discriminated against her on the basis of gender when it denied her full-time employment and refused to consider her for graduate faculty status. Defendant employs Plaintiff's husband, Abdelmoneam Raef, as a tenure-track assistant professor in the geology department. Defendant has a Dual Career program, which assists spouses of primary hires to obtain employment with Defendant. Raef made no demand for Defendant to offer Plaintiff a position before accepting his position with Defendant, but Raef was unaware of the option of spousal hiring during his interview or contract negotiation.

Plaintiff has a Ph.D. in geophysics. In February 2010, Plaintiff began seeking employment with Defendant.   Plaintiff made two requests for full-time employment with Defendant on May 12, 2010, and August 11, 2010.[2]   These requests occurred before she was officially hired by Defendant.

Other than for student and part-time instructors, the Dean of the College of Arts and Sciences ("the College") controls the creation and funding of academic positions in the geology department.   Brian Spooner was the interim Dean of the College from June 2009 through June 2011.   On May 12, 2010, Dean Spooner received an email from Plaintiff, with her Curriculum

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.  These facts are taken from the parties' original briefing to the Court on Defendant's Motion for Summary Judgment (Docs. 29, 34, and 39) as well as from additional briefing (Docs. 60, 61, 63, and 64).

[2] The Court will specifically discuss the timing of these requests below.

Vita ("CV") attached, requesting a tenure track or term position.  Dean Spooner concluded that Plaintiff was not qualified for a tenure track position and concluded that she might be qualified for a part-time teaching position. Dean Spooner was the individual who agreed to create Plaintiff's part-time position in 2010.

Plaintiff's part-time position was created by Defendant in August 2010 as a spousal hire. In the fall of 2010, Plaintiff began teaching Structural Geology, Earth in Action, and Earth through Time.

Plaintiff made another request for full-time employment on April 1, 2011. Dean Spooner received Plaintiff's email, with her CV attached, requesting a tenure track position.  Dean Spooner had the same reaction about her weak CV and did not believe that she was qualified for a full-time position.

On May 18, 2011, Dr. George Clark, interim department head in Defendant's geology department since July 2007, notified Plaintiff that he was recommending an extension of her part-time employment. Clark had no ability to create a tenure track faculty position nor had the authority to give Plaintiff a tenure track faculty position.  Dean Spooner appointed Plaintiff to another nine-month part-time appointment on June 22, 2011.  Plaintiff remained employed by Defendant part-time through at least the 2012-2013 academic year.

Beginning January 1, 2012, Dean Spooner was no longer the Dean of the College, and Peter Dorhout became Dean of the College.  In February 2012, Clark sought input from his geology department colleagues about asking Dean Dorhout for permission to advertise for a structural geology position.  Plaintiff wanted a structural geologist position.  On February 22, 2012, Plaintiff's husband, Raef, responded to Clark (and copied Dean Dorhout) suggesting that

Plaintiff be appointed to the structural geology position without a national search. On that same date, Clark emailed Raef back stating:

> While I do appreciate that you and Sabreen feel that appointing her to a tenure-track position in structural geology would be the best way to help her make better use of expertise and talents, as Interim Department Head I must look toward helping the Geology Department best fulfill ITS purpose and potential. Accordingly, I would not favor appointing her to fill that position without making an national/international search for the best possible candidate.  Of course, she would be welcome to submit an application for that position if we get permission to make a search.

In March 2012, Clark requested that Dean Dorhout open a position for a structural geologist. Dean Dorhout rejected Clark's request and instead decided to search for a permanent department head.

Plaintiff also sought to be part of the graduate faculty.  The graduate faculty is the group of faculty members who are authorized to teach graduate classes and to supervise or vote on a graduate student's thesis.  On December 11, 2010, Plaintiff emailed Clark expressing interest. Clark responded to Plaintiff and explained the process.  On April 7, 2011, Plaintiff submitted an application form, copies of her published papers, and her CV to Clark. Clark acknowledged receipt.  On August 29, 2011, Plaintiff sent another email to Clark asking if he needed any further information.  On December 8, 2011, Plaintiff emailed Dean Aistrup seeking assistance because no action had been taken on her request.[3]

Pursuant to the Graduate Faculty Handbook, "[t]he nomination of members must be initiated by the candidate's department head and recommended by two-thirds of all eligible Graduate Faculty in the program, who are responsible for identifying qualified candidates whose

---

[3] Plaintiff does not explain to the Court the relevance of this request or what authority or role that Dean Aistrup has in the graduate faculty process.

service is needed in the graduate program." For non-tenured faculty, "[n]ominations are sent to the Graduate School in duplicate on Graduate Faculty nomination forms that must be endorsed by the head of the nominee's department or the chairperson of the nominee's program." Generally, the minimum criteria for graduate faculty status are 1) a terminal degree or national recognition in the field, and 2) an article in a refereed journal or scholarly work in the last five years. These criteria, however, do not guarantee admission to the Graduate Faculty. Plaintiff met the two criteria because she had a terminal degree and had an article in a refereed journal.

Clark decided not to initiate the graduate faculty process for Plaintiff because he believed that she lacked the necessary qualifications. Plaintiff had no research program, and Clark believed that Plaintiff was not doing recent, relevant work in the field. The only part-time faculty member who is a member of the graduate faculty is Keith Miller. Miller had an active research program and won grant funding from the Kansas Department of Transportation when he was nominated in 1997 by then-department head Charles Oviatt.

*Waiver Facts*

Plaintiff submitted an unverified Intake Questionnaire to the EEOC on March 14, 2012. In the Intake Questionnaire, she claimed that she was discriminated against on the basis of her gender, national origin, and religion.[4] She signed this Intake Questionnaire, but she did not verify it.

On March 16, 2012, EEOC investigator Lynus Becker conducted a telephone interview with Plaintiff regarding her claim of discrimination against Defendant. On this same date, Mr.

---

[4] The Intake Questionnaire is the only document asserting these three bases for discrimination. In Plaintiff's Complaint with this Court, she alleged gender and religious discrimination. After discovery, Plaintiff abandoned her religious discrimination claim. *See* Pretrial Order, Doc. 31, p. 6.

Becker drafted a Charge of Discrimination on EEOC Form 5, which summarized Plaintiff's claims against Defendant. He sent this charge, along with a letter, to Plaintiff.

The letter from the EEOC states several things.[5]  The letter first states that the letter is in response to her recent written Intake Questionnaire.  It provides:

> The attached EEOC Form 5, Charge of Discrimination, is a summary of your claims based on the information you provided.  Because the document you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge. Before we investigate your charge, however, you must sign and return enclosed Form 5.

The letter then explains what Plaintiff needs to do to sign the charge.  Mr. Becker also states in the letter:

> Before we initiate an investigation, we must receive your Signed Charge of Discrimination (EEOC Form 5) within thirty (30) days from the date of this letter. Under EEOC procedures, if we do not hear from you within 30 days or receive your signed charge within 30 days, we are authorized to dismiss your charge and issue a right to sue letter allowing you to pursue the matter in federal court.

On March 16, Mr. Becker also mailed a "Notice of Charge of Discrimination" to Defendant. This Notice stated that Plaintiff had filed a charge of sex discrimination under Title VII against Defendant, but no action was required by Defendant at that time. The Notice also stated, "This is to notify you that an unperfected charge of discrimination has been filed with the EEOC. You should receive a copy of the perfected charge of discrimination within 45 days."  No other particulars were set forth in the Notice.

Plaintiff spoke with Mr. Becker on the phone again on April 4, 2012.  Mr. Becker's notes indicated that Plaintiff told him that she had no additional information to convey.  Plaintiff did

---

[5] The letter was erroneously dated January 18, 2012.

not sign or return EEOC Form 5 (Charge of Discrimination) to the EEOC. Plaintiff stated that she believed that the investigator told her that she did not have to return the form.

On April 19, 2012, the EEOC issued a Dismissal and Notice of Right to Sue. The Dismissal stated:

> The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

A copy of this Dismissal was sent to Defendant.

Plaintiff filed suit in this Court on June 15, 2012, asserting a gender and religious discrimination claim.  When Defendant filed its Answer, it asserted generally that Plaintiff had failed to exhaust her administrative remedies. On September 24, 2012, Defendant received the EEOC file.  On January 21, 2013, Defendant deposed Plaintiff.  One month later, and in accordance with the Pretrial Order dispositive motion deadline, Defendant filed its Motion for Summary Judgment.

*Issues Currently Before the Court*

Defendant previously sought summary judgment asserting several bases for dismissal including that (1) Plaintiff failed to exhaust administrative remedies because she did not file a verified charge with the EEOC, (2) Plaintiff failed to establish a prima facie case of gender discrimination, and (3) even if Plaintiff could establish a prima facie case, Plaintiff could not demonstrate pretext.  This Court determined that Plaintiff's failure to file a verified charge of discrimination divested this Court of subject matter jurisdiction to hear her claim.  Thus, the Court dismissed Plaintiff's lawsuit without reaching the substantive issues.

On appeal, the Tenth Circuit Court of Appeals reversed this decision. The Tenth Circuit found that a verified charge with the EEOC was not a jurisdictional requirement for suit, but rather it was a condition precedent to suit.[6]  Because verification is a condition precedent to suit, the Tenth Circuit found that verification could be waived. The Tenth Circuit did not address the waiver issue instead finding that the Court should undertake that analysis in the first instance and remanded the case back to this Court.[7]

Upon remand, this Court conducted a status conference and instructed the parties to submit additional briefing on the waiver issue. After briefing was complete, the Court held a hearing on November 23, 2015. The Court heard arguments related to waiver, as well as to the substantive gender discrimination claim.

Defendant seeks summary judgment and argues that the condition precedent of verification was not waived by Defendant or the EEOC.  In addition, Defendant contends that Plaintiff's gender discrimination claim fails substantively. The Court will first address waiver and then address Plaintiff's claim substantively.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[8] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9]  The

---

[6] *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1038-39 (10th Cir. 2015).

[7] The Court will discuss the relevant waiver principles, as outlined by the Tenth Circuit, below.

[8] Fed. R. Civ. P. 56(c).

[9] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[10]   The nonmovant must then bring forth specific facts showing a genuine issue for trial.[11]   These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[12]   The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[13]

### III.   Analysis

### A.  Waiver

The Court will first address whether the condition precedent of verifying a charge before the EEOC was waived in this case.   Verification is a necessary precondition to filing a Title VII discrimination claim.[14]   It is the plaintiff's burden to properly plead verification because verification and proof of verification lies with the plaintiff.[15]   The verification requirement is in place to protect employers.   Specifically, in *Edelman v. Lynchburg College*,[16] the United States Supreme Court stated:

> The verification requirement has the different object of protecting employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for

---

[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[11] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[12] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[14] *Gad*, 787 F.3d at 1041.

[15] *Id.*

[16] *Edelman v. Lynchburg Coll.*, 535 U.S. 106 (2002).

perjury. This object, however, demands an oath only by the time the employer is obliged to respond to the charge, not at the time an employee files it with the EEOC.[17]

The question in this case is whether Defendant or the EEOC waived the condition precedent of verification because there is no question that Plaintiff did not verify her charge before the EEOC. A defendant can achieve dismissal of the plaintiff's suit if the defendant raises the verification defect, but if an employer "fails to raise a known verification defect, [it] has waived the issue as a potential defense."[18] Whether the EEEOC may unilaterally waive the verification requirement depends upon the circumstances of the case.[19] Plaintiff argues that both Defendant and the EEOC waived verification.[20] The Court will first address Defendant's conduct.

### 1. Defendant's Conduct

Plaintiff concedes that Defendant did not waive the condition precedent of verification *during* the EEOC proceedings.[21] Indeed, as noted above, Defendant only received two communications from the EEOC. The first communication was in mid-March, when Defendant received a "Notice of Charge of Discrimination." This Notice, however, stated that an unperfected charge of discrimination had been filed with the EEOC and that no action was

---

[17] *Id.* at 113.

[18] *Gad*, 787 F.3d at 1042.

[19] *Id.* at 1042-43.

[20] In the Tenth Circuit's opinion, it stated that Plaintiff only argued that the EEOC waived the verification requirement, not Defendant. *Id.* at 1042. Plaintiff argued in briefing to this Court, both prior to and subsequent to her appeal to the Tenth Circuit, that Defendant waived the verification requirement. Thus, this Court will address Defendant's conduct as well.

[21] Plaintiff originally argued that Defendant provided a response to the EEOC during the EEOC proceedings but subsequently determined that Defendant did not communicate with the EEOC at all.

required by Defendant. It did not notify Defendant of the particulars of the charge. Next, approximately one month later, Defendant received a copy of the Dismissal and Notice of Right to Sue that had been sent to Plaintiff. These were the only communications from the EEOC, and neither required a response by Defendant. Because Defendant was not required to do anything with the EEOC, its ability to waive the condition precedent of verification did not arise and was not available during the EEOC process. Thus, Defendant did not waive the condition precedent of verification during the EEOC proceedings.

Plaintiff argues, however, that Defendant had the opportunity to assert the condition precedent of verification at several different times and failed to do so. Plaintiff first contends that prior to the lawsuit being filed, Defendant could have followed up with the EEOC to determine why there appeared to be procedural irregularities in the case. Specifically, Plaintiff argues that the EEOC gave notice to Defendant that an unperfected charge had been filed and then the EEOC gave Defendant a copy of the Right to Sue Letter. Plaintiff contends that Defendant could have asked the EEOC why a Right to Sue Letter was issued when it appeared that there was no perfected charge. The Court gives short shrift to this argument. The EEOC's notices stated that no action was required by Defendant. Defendant had no obligation to perform its own investigation on the EEOC case and had no obligation to inquire with the EEOC to determine if there were procedural irregularities.[22] In addition, the last communication from the EEOC indicated that the case was no longer before the EEOC. Thus, Defendant did not waive the condition precedent of verification by failing to contact the EEOC when it had no obligation to do so.

---

[22] Plaintiff essentially argues that Defendant should perform the EEOC's job.

Plaintiff next argues that Defendant could have raised the verification defense at the time Defendant filed its answer in July 2012.  Defendant asserted generally in its answer that Plaintiff failed to exhaust her administrative remedies.  Yet, Defendant did not specifically state that Plaintiff failed to verify her charge.  At the time Defendant filed its answer, however, Defendant would not have had the information to determine whether Plaintiff verified her charge.  Indeed, as noted by the Tenth Circuit, "verification and proof of verification lie chiefly within the plaintiff's control."[23]   Furthermore, Defendant's defense that Plaintiff failed to exhaust her administrative remedies would encompass not filing a verified charge.  Thus, the Court concludes at the time Defendant filed its answer, Defendant did not waive the condition precedent of verification.

Next, Plaintiff contends that by October 2012, Defendant had waived the verification requirement.  On September 24, 2012, pursuant to a Freedom of Information Act request, Defendant received a copy of the EEOC's file.  Plaintiff asserts that Defendant would have known at that time that the EEOC file did not contain a verified charge and should have either amended its answer or filed a motion to dismiss to raise the issue of verification.  Defendant, however, argues that although the file did not contain a verified charge, it did not conclusively demonstrate to Defendant that Plaintiff had not verified her charge (or had attempted to verify her charge) with the EEOC.  Defendant argues that it had to pursue discovery, and it did not conclusively determine that Plaintiff did not verify her charge until her deposition when she testified that she did not.  The Court agrees that Defendant could not assert lack of verification prior to taking Plaintiff's deposition and thus could not file a motion to dismiss on this basis.

---

[23] *Gad*, 787 F.3d at 1042.

Furthermore, with regard to Defendant amending its answer, as noted above, Defendant had previously asserted that Plaintiff failed to exhaust administrative remedies. Accordingly, Defendant did not waive the condition precedent or verification prior to the deposition.

Finally, Plaintiff contends that once Defendant took her deposition in late January 2013, Defendant conclusively knew that Plaintiff did not verify her charge.[24] This contention is undisputed. A dispositive motion deadline, however, had already been set by the Court for February 28, 2013. Defendant raised the verification issue in its Motion for Summary Judgment. It would have served no purpose for Defendant to file a motion to dismiss on the verification issue in the one-month timeframe from the deposition to the dispositive motion deadline. Thus, the Court concludes that Defendant raised the verification issue at the first time it was available, and Defendant did not waive the condition precedent of verification during the EEOC proceedings or during the lawsuit.[25]

### 2. EEOC's Conduct

Although the Court finds that Defendant did not waive the condition precedent, the Court must now consider the EEOC's conduct. In the Tenth Circuit's opinion, it noted several principles to consider when deciding whether the EEOC can unilaterally waive the verification

---

[24] Plaintiff argues that by the time Defendant raised the verification issue (February 2013), it had been approximately one year from when the EEOC closed its file (April 2012), and the purpose of verification was satisfied during Plaintiff's deposition because she stated under oath her allegations. Plaintiff's argument demonstrates why a plaintiff should be required to verify her charge while it is before the EEOC. Verification is supposed to serve the purpose of protecting employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath. *See Edelman*, 535 U.S. at 113. Defendant spent approximately eight months defending a federal lawsuit prior to Plaintiff stating her allegations under oath in her deposition.

[25] Defendant also argues that verification can only occur while the case is before the EEOC and once the case has been filed in federal court, verification cannot occur and thus waiver by Defendant cannot occur. Because the Court finds that none of Defendant's conduct operated as a waiver of the verification requirement, the Court will not address this argument.

defect.  The circuit noted that verification protects the employer from frivolous claims and from "the disruption and expense of responding to a claim."[26]  In addition, "verification provides notice and an opportunity for the employer to investigate, promoting the prompt administration of discrimination complaints and possible settlement."[27]  However, the circuit stated that "a rigid rule can result in a Title VII complainant inadvertently forfeiting his or her rights. That suggests a rule where non-compliance might be excused, at least in extreme circumstances where negligent EEOC conduct would mislead a reasonable layperson into thinking he need not verify."[28]

The Court is reluctant to find that an administrative agency can waive the rights of another party who did not participate in the proceedings.  However, it is beyond doubt that the EEOC's conduct in this case was problematic.  The EEOC made conflicting statements to Plaintiff both orally and in writing.  In addition, the EEOC's conduct contradicted several of its written representations to Plaintiff.

First, the EEOC's March 16, 2012, letter contains several conflicting statements.[29]  The letter provides that "[b]ecause the document you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge."[30]  Presumably, this statement meant that Plaintiff's Intake Questionnaire constitutes a charge.  Yet, the letter also states, twice, that before the EEOC investigates the

---

[26] *Gad*, 787 F.3d at 1042 (citing *Edelman*, 535 U.S. at 113).

[27] *Id.*

[28] *Id.* at 1042-43.

[29] As noted above, the letter is also erroneously dated January 18, 2012.

[30] The EEOC did notify Defendant of an unperfected charge.

charge, the EEOC must receive a signed Charge of Discrimination. This Charge of Discrimination presumably relates to EEOC Form 5 that the EEOC drafted and sent to Plaintiff. There is no distinction in the letter between an unperfected and perfected charge of discrimination. Considering that a verified charge of discrimination is a necessary prerequisite to filing suit in federal court, these statements seem problematic as it makes it unclear to a reasonable layperson whether or not they have already filed a charge with the EEOC.[31]

In addition, the EEOC's conduct was problematic as it investigated the allegations prior to receiving a signed charge although the letter twice states that the EEOC *will not* initiate an investigation until it receives a signed Charge of Discrimination. The evidence demonstrates that on April 4, the EEOC investigator spoke with Plaintiff (a second time) about her allegations.[32] Mr. Becker's notes from April 4 indicate that Plaintiff stated that she had no additional information to convey, and his notes indicate that *further investigation* would unlikely result in a violation. When the EEOC issued its Right to Sue Notice, it stated that it *had investigated* her charge but found no violation.

Plaintiff also testified that Mr. Becker told her during the April 4 conversation that she did not need to return the form. The EEOC's March 16 letter also states that "if [the EEOC does] not hear from you within 30 days or receive your signed charge within 30 days, [the EEOC is] authorized to dismiss your charge and issue a right to sue letter allowing you to pursue the

---

[31] As noted in *Edelman*, a verified charge can occur after an unverified charge, and the verified charge will relate back to the initial filing of the unverified charge. *Edelman*, 535 U.S. at 115. The United States Supreme Court found this to be a permissible practice because it would ensure "that the lay complainant, who may not know enough to verify on filing, will not risk forfeiting his rights inadvertently." *Id.* Here, the EEOC never required a verified charge. Thus, there is no verified charge that could relate back to the unverified charge.

[32] Defendant argues that Plaintiff retained counsel on April 3, 2012, and thus Plaintiff was represented by counsel throughout the remainder of the EEOC procedures. Plaintiff provides the retainer agreement demonstrating that Plaintiff's counsel was not retained for the agency procedures. Thus, the Court rejects Defendant's argument that Plaintiff had counsel, or had access to counsel for advice, during the EEOC procedures.

matter in federal court.[33]  This statement appears to indicate that a signed, verified charge is unnecessary for the EEOC to issue a Right to Sue letter. And, indeed, the EEOC did issue a Right to Sue Letter within 30 days without receiving a signed Charge of Discrimination.

In this case, the EEOC's procedures were deeply flawed.   A reasonable layperson would be unclear as to what document constitutes the charge of discrimination.  In addition, the EEOC failed to adequately and accurately follow its own procedures because it investigated Plaintiff's allegations without receiving a signed charge of discrimination.[34]  The EEOC then issued a Right to Sue Letter stating that it had investigated her charge.  The EEOC also stated that if Plaintiff did *not* return a signed charge, it was authorized to allow her to sue in federal court.  Due to the EEOC's statements and conduct, a reasonable layperson would believe that a verified charge of discrimination was an unnecessary prerequisite to proceed in federal court.

The EEOC's flawed procedures in this case resulted in prejudice to both parties.  Defendant was put to the disruption and expense of defending a suit in which Plaintiff failed to verify and state under oath that her claims of gender discrimination were accurate.[35]   But

---

[33] Mr. Becker's notes also indicate that he orally told Plaintiff that upon dismissal, she would be issued a Notice of the Right to Sue, and she must file her case in federal district court within ninety days of receiving the Right to Sue.

[34] As the Tenth Circuit noted in *Gad*, "the statute contemplates the investigation process beginning with a verified charge." *Gad*, 787 F.3d at 1042 (citing 42 U.S.C. § 2000e-5(b)). In this case, the investigative process began without a verified charge.

[35] The Court also notes that the differences between the Intake Questionnaire (which Plaintiff submitted and signed but did not verify) and the Charge of Discrimination (EEOC Form 5) (which the EEOC prepared for Plaintiff but she did not sign) are significant.  Plaintiff originally claimed discrimination on the basis of national origin, religion, and gender in the Intake Questionnaire. She also alleged that Defendant discriminated against her by not considering her for graduate faculty membership, but her claims were outside the relevant time period. Finally, she alleged that Defendant discriminated against her by not hiring her as a full-time structural geologist in February 2012.  The Charge of Discrimination only included a gender discrimination claim related to Defendant allegedly not hiring Plaintiff to a full-time structural geologist position in February 2012.  It did not include any reference to discrimination related to graduate faculty membership.
Generally, a plaintiff's Charge of Discrimination determines the scope of the proceedings in a plaintiff's subsequent lawsuit.  In this case, the Court cannot rely on the Charge of Discrimination and instead relies upon the

-16-

Plaintiff was entitled to rely upon the EEOC's handling of its own procedures, and it would be prejudicial to Plaintiff to follow the EEOC's instructions and later find that as result of following these instructions, she lost the ability to bring her discrimination claim.  Overall, it would be more prejudicial to Plaintiff to have her substantive rights forfeited entirely due to the EEOC's conduct.[36]  Thus, based upon equitable considerations, the Court concludes that the EEOC's flawed, inconsistent, and indefensible conduct in this case operated as a waiver of the condition precedent of verification.  Therefore, the Court now examines the substantive claims.

### B.  Substantive Gender Discrimination Claim

Plaintiff claims that Defendant discriminated against her on the basis of gender when it denied her full-time tenure track employment and refused to consider her for graduate faculty status.  Plaintiff has no direct evidence of gender discrimination, and thus her claim is subject to the *McDonnell Douglas* burden-shifting scheme.[37]  First, Plaintiff must establish a prima facie case of discrimination.[38]  The burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its decision.[39]  Finally, the burden shifts back to Plaintiff to

---

Intake Questionnaire because that is the signed, but not verified, document filed with the EEOC.  Making the issue more problematic is that Plaintiff's claims are ever-changing. In Plaintiff's lawsuit filed in this Court, she included a religious discrimination claim, but she dropped it after discovery. With regard to the February 2012 alleged gender discrimination claim relating to the structural geologist position (included in her Intake Questionnaire and Charge of Discrimination), this incident appears to be the only potential timely claim (although substantively infirm).  Yet, Plaintiff does not specifically discuss the February 2012 incident in her briefing to this Court.  Plaintiff addresses the graduate faculty membership claim, but the dates in her federal lawsuit do not match the dates on her Intake Questionnaire (and were not included in the Charge of Discrimination that she did not sign).  Suffice to say, the EEOC's flawed procedures resulted in a procedural and substantive mess.

[36] Defendant can still defend the discrimination claim both procedurally and substantively.

[37] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1972).

[38] *McDonnell Douglas*, 411 U.S. at 802.

[39] *Id.*

demonstrate that Defendant's reason is pretext for gender discrimination.[40]   The Court will first address Plaintiff's full-time tenure track employment claim and then her graduate faculty status claim.

### 1. Full-time Employment

Under Title VII, a party must file an administrative charge within 300 days of the adverse employment action.[41]   The limitations period begins on the day that the employee is notified of the adverse decision.[42]   In this case, Plaintiff filed her Intake Questionnaire on March 13, 2012. The parties therefore agree that the relevant time period begins on May 19, 2011, and Plaintiff specifically disavows any claims pre-dating May 19, 2011.[43]

Plaintiff made three requests for full-time employment: (1) May 12, 2010, (2) August 11, 2010, and (3) April 1, 2011.  Plaintiff does not identify a specific denial with regard to the May 12, 2010, and August 11, 2010, full-time employment requests.   The record demonstrates, however, that Defendant denied her full-time request on August 11, 2010.[44]   Thus, any allegations relating to these full-time employment requests are time-barred because they occurred outside of the relevant time period.   Indeed, it appears that Plaintiff agrees with this

---

[40] *Id.* at 804.

[41] *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1202 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)).

[42] *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003).

[43] To the extent that Plaintiff asserts any claims relating to (1) her original employment with Defendant in 2010; (2) the geology department's decision in 2010 to pursue an environmental geobiologist rather than a structural geologist; and (3) the reauthorization of the environmental geobiologist search in April 2011, these claims would be barred.

[44] Defendant offered Plaintiff part-time employment, and Plaintiff countered by asking for a full-time position.  Defendant denied Plaintiff's request for full-time employment but asked Plaintiff to reconsider its offer of a part-time position.

general proposition, but she continues to argue that Defendant discriminated against her by denying her full-time employment.

With regard to Plaintiff's third request for full-time employment on April 1, 2011, there are numerous fundamental problems with Plaintiff's allegation of gender discrimination. First, there is also an issue with timing with regard to this "denial" and whether it falls within the 300-day time period. The evidence demonstrates that Clark notified Plaintiff on May 18, 2011, that he would be recommending Plaintiff for an extension of her part-time employment.[45] Thus, to the extent that Clark's recommendation for extending part-time employment can be considered the adverse action of denying her request for full-time employment, it would fall outside the 300-day limitation period of May 19, 2011.

Plaintiff argues, however, that she was only made aware that Clark's recommendation was approved on May 27, 2011.[46] Plaintiff was issued another nine-month part-time appointment on June 22, 2011. Plaintiff contends that the May 27 date is the relevant date because that is the date she was made aware of approval, and claims relating to her request for full-time employment from May 27 forward are timely made. Plaintiff, however, is extremely vague and does not assert *any specific* adverse employment action after May 27.[47] Instead, she

---

[45] Plaintiff testified that she did *not* feel that Clark was discriminating against her by recommending her reappointment to part-time employment.

[46] Plaintiff fails to provide evidentiary support for this contention.

[47] Plaintiff's problem is further compounded because she does not identify any specific instance in which she requested full-time employment *after* May 19, 2011 (the relevant time period). The Court notes that in February 2012, Clark indicated that he may attempt to have the Dean create or advertise for a structural geologist position. Plaintiff's husband expressed an interest on behalf of Plaintiff for the structural geologist position without performing a national search. Clark responded to Plaintiff's husband by stating that he would not favor appointing Plaintiff to a structural geologist position without conducting a national or international search, but Plaintiff could submit an application if the Dean did give permission to create such a position. Ultimately, the Dean rejected Clark's proposal to create a structural geologist position. Plaintiff does not discuss these events and does not

states that the adverse employment action is Defendant's *ongoing* refusal to consider her for full-time employment via its spousal hire program.

Plaintiff's categorization of Defendant's "ongoing refusal" is similar to asserting a continuing violation claim.  The continuing violation doctrine, however, is unavailable for "multiple discrete acts of discrimination."[48]   Because Plaintiff alleges that Defendant discriminated against her when it denied her full-time employment, Plaintiff must identify specific and discrete acts within the relevant timeframe.[49]  Plaintiff fails to do so.   However, to the extent that Defendant's June 22, 2011, extension of part-time employment can operate as a timely adverse employment action, the Court will address it.[50]

Plaintiff specifically disavows a failure to promote claim, but she essentially alleges one because she claims that Defendant failed to hire her to full-time employment.  Generally, to establish a failure to promote claim, "a plaintiff must demonstrate by a preponderance of the evidence that (1) she belongs to a protected class; (2) she applied for an available position for which she was qualified; [and] (3) she was rejected under circumstances which give rise to an inference of unlawful discrimination."[51]

A failure to promote claim fails from the start because Plaintiff does not and cannot identify any available position.  She concedes that there have been no open full-time positions

---

specifically assert in her briefing that the circumstances surrounding the February 2012 events were discriminatory. Thus, the Court will not discuss the hypothetical structural geologist position in February 2012.

[48] *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 632 (10th Cir. 2012) (citations omitted).

[49] *Id.*

[50] Plaintiff used May 27 as the relevant date because she claims that is when she was notified of the decision. But, as noted above, Plaintiff failed to provide evidentiary support for this contention.  Thus, the Court will use the June 22 date.

[51] *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (quotation marks and citation omitted).

for which Defendant may promote her.  Instead, she complains that Defendant did not create a full-time position for her.  In the Tenth Circuit, "[a]n employer's failure to promote a plaintiff to a non-existent position is not enough to support a presumption of intentional [] discrimination."[52]

Plaintiff asserts that the circumstances in her case differ from previous Tenth Circuit cases.  She claims that Defendant has an established history for creating new spousal positions and identifies two previous spousal hires when there were otherwise no open positions.[53] Plaintiff contends that Defendant could have done the same for her.  Defendant, however, did do the same for Plaintiff.  Plaintiff's initial hire in 2010 was the result of a spousal hire position being created for her.  To the extent that she complains it was not a full-time position, her complaint is time-barred because her part-time hiring occurred in 2010—well before the relevant time period in this case.  To the extent that she complains that Defendant should have moved her into a full-time employment position at a later date, the Court cannot find that this constitutes an adverse employment action.  There were no open positions, and Defendant had no obligation to create a position for her.  Thus, a failure to promote claim fails.

Because Plaintiff cannot establish a prima facie failure to promote claim, Plaintiff attempts to proceed on the alternate theory of disparate treatment.  This theory fares no better. To establish a prima facie case of gender discrimination on the basis of disparate treatment, a plaintiff must demonstrate that "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under

---

[52] *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1137 (10th Cir. 2004); *see also Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1362 (10th Cir. 1997) (finding that the plaintiff could not maintain a failure to promote claim for gender discrimination when the employment position did not exist).

[53] The Court will discuss below the problems with using these two individuals as comparators or similarly-situated individuals.

circumstances giving rise to an inference of discrimination."[54]   Generally, "[o]nly acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action."[55]

Plaintiff fails to identify a significant change in employment status.   In fact, there has been no change in Plaintiff's employment status.   She began as a part-time employee and she remains a part-time employee.[56]   As noted above, there were no open full-time positions for which to promote her, and the failure to create a position is not an adverse action that caused a significant change in Plaintiff's employment status. Thus, Plaintiff cannot establish the second element of a prima facie case.

Finally, Plaintiff cannot establish the third element of a prima facie case because she cannot identify any circumstances giving rise to an inference of discrimination.  A number of circumstances may indicate a discriminatory motive.[57]   Some of these circumstances include preferential treatment to individuals outside of the plaintiff's protected class or statements or actions made by the decision-maker which could reflect discriminatory animus.[58]

Plaintiff asserts numerous reasons that she contends supports an inference of gender discrimination including:   1) Plaintiff is the only female faculty member in the geology department, 2) the geology department departed from its written policy and its practice of

---

[54] *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007).

[55]  *EEOC v. C.R. England, Inc*., 644 F.3d 1028, 1040 (10th Cir. 2011) (quotation marks and citation omitted).

[56] In fact, she received an increase in her part-time appointment from .4 FTE to .5 FTE.

[57] *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005).

[58] *Id.* (citation omitted).

consulting faculty regarding hiring decisions, 3) Defendant's explanation for why it did not offer Plaintiff a full-time position has changed, 4) despite the need for a structural geologist position, once Plaintiff expressed interest, Defendant changed its course, and 5) two other current faculty members obtained their positions through spousal hiring despite the fact that Defendant did not have an open employment position.

As to the first contention that Plaintiff is the only female in the department, the fact that Plaintiff is employed by the geology department would also demonstrate a non-discriminatory inference that the geology department employs females. Defendant also presents evidence that Plaintiff is the only female faculty member because another female faculty member recently died. Thus, Plaintiff's first contention provides no real inference of gender discrimination.

Plaintiff's second and fourth contentions relate to decisions made by Clark, the head of the geology department. Plaintiff claims that Clark never made any attempt to consult the faculty regarding whether to offer Plaintiff full-time employment, which was contrary to written policy and longstanding practice. In addition, Plaintiff contends that Clark shifted his focus to an environmental geologist position after Plaintiff expressed interest in the structural geologist position in 2010.

First and foremost, Clark had no ability to create or give Plaintiff a full-time tenure track position. Only the Dean had the ability to create such a position. One of the fundamental problems with Plaintiff's claim is that she does *not* assert that Dean Spooner or Dean Dorhout engaged in gender discrimination. Because there were no open positions available, these two individuals were the only individuals who even had the ability to create a full-time tenure track faculty position, and Plaintiff does not claim that they engaged in gender discrimination. Thus,

Plaintiff's discriminatory inference allegations against Clark fail because he was not a decision-maker and could not have created a full-time position for her.[59]

Plaintiff also alleges that Defendant's explanation for why it has not offered her a full-time position has changed.  She asserts that Defendant approved the hire of a full-time faculty member subsequent to her request for full-time which purportedly refutes Defendant's assertion that there were no funds to offer Plaintiff full-time employment.  Plaintiff, however, offers no evidence to support this contention.

Finally, Plaintiff attempts to demonstrate an inference of discrimination by asserting that she was treated differently than two other male individuals who were hired to full-time positions through Defendant's spousal hire program.   She claims that Matthew Totten and Joel Spencer obtained better positions than her.  "Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.' "[60] "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated."[61]

Plaintiff cannot demonstrate that these other individuals were similarly situated to her.  Plaintiff's only argument in an attempt to demonstrate that Totten and Spencer are similarly

---

[59] To the extent that Plaintiff claims that Clark did not follow Defendant's written procedures in filling a position, Defendant aptly argues that Defendant's written procedures are only applicable if there is a position to fill.  As noted above, the Dean had not created a position.  In addition, Plaintiff's complaint regarding the environmental geologist position in 2010 is time-barred.

[60] *PVNF*, 487 F.3d at 801 (citing *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)).

[61] *Aramburu v. Boeing Co*., 112 F.3d 1398, 1404 (10th Cir. 1997).

situated is that Clark was involved in the decision-making of their hiring.[62]   The evidence, however, demonstrates that Mary Hubbard was the geology department head in 2005 and 2006 (when Totten and Spencer were hired).[63]   Thus, although Clark may have been consulted about the hires, he had no say in the decision.   There are no similarities in the circumstances. Furthermore, as stated above, Clark's actions are irrelevant.   The Dean is the individual who has the ability to create these positions, and Plaintiff does not assert that the Dean engaged in discriminatory behavior.

In one last attempt, Plaintiff throws out an allegation that there is evidence of a historical pattern or practice of gender bias in the geology department.   Plaintiff did not bring such a claim. And there is no evidence to support Plaintiff's contention. In sum, Plaintiff offers nothing except rank speculation that Defendant discriminated against her, and she fails to point this Court to any evidence that would demonstrate a question of fact regarding gender discrimination on behalf of Defendant.   Thus, Plaintiff cannot demonstrate a prima facie case of gender discrimination relating to full-time employment.

### 2.  *Graduate Faculty Status*

Plaintiff also claims that Defendant discriminated against her when Clark refused to process her application to be part of the graduate faculty.   The graduate faculty is the group of faculty members authorized to teach graduate classes and supervise or vote on a graduate student's thesis. Plaintiff first expressed interest on December 11, 2010.   She submitted her CV,

---

[62] Plaintiff concedes that Totten and Spencer both have been in careers longer than Plaintiff and have much more academic experience than her.

[63] The Court also notes that their hiring occurred approximately five years before Plaintiff's hiring.   It also occurred under different circumstances because their wives would not accept a position with Defendant unless their spouses were offered full-time employment.

application, and a copy of her publications to Clark on April 7, 2011. Clark acknowledged receipt. On August 29, 2011, Plaintiff sent an email to Clark asking if he needed any further information. There is no evidence that Clark responded to Plaintiff's inquiry. On December 8, 2011, Plaintiff emailed Dean Aistrup seeking assistance because there had been on action taken on her graduate faculty applications.[64]

There does not appear to be any communication from Defendant to Plaintiff stating Defendant's intentions with regard to her application. Clark, the department head in charge of initiating the graduate faculty process, avers, however, that he did not initiate it because he did not believe Plaintiff possessed the necessary qualifications. Thus, it is undisputed that Clark did not process Plaintiff's request to be part of the graduate faculty. For purposes of this Order, the Court will assume that Clark's failure to process Plaintiff's request to be part of the graduate faculty occurred within the relevant time period.

### a. Prima facie case

As noted above, the elements of a prima facie case of gender discrimination on the basis of disparate treatment include "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination."[65] Plaintiff meets the first element. Defendant concedes for purposes of summary judgment that denial of graduate faculty status might be considered an adverse employment action.

Defendant argues, however, that Plaintiff cannot meet the third element because Plaintiff cannot demonstrate circumstances giving rise to an inference of discrimination. As noted above,

---

[64] As noted above, Dean Aistrup's role in this decision is unclear.

[65] *PVNF*, 487 F.3d at 800 (citations omitted).

some of the circumstances that may give rise to an inference of discriminatory animus are statements or actions made by the decision-maker which could reflect discriminatory animus or preferential treatment to individuals outside of the plaintiff's protected class or statements.[66] Plaintiff asserts that the following circumstances give rise to an inference of discrimination: (1) Clark did not follow Defendant's policy for the graduate faculty process, and (2) Clark processed three males' applications for graduate faculty status.

With regard to Plaintiff's first contention, she contends that Defendant failed to follow its policy which provides:

> In every case, the Graduate Faculty of the department or program must submit a written evaluation of the candidate, including the number of faculty at the nominating session, the number eligible to vote, the number of votes in favor, the number opposed, and the role in the graduate program to be pursued by the nominee.

Plaintiff, however, skips to the middle of the written policy. Before the graduate faculty submits a written evaluation of the candidate in every case, the handbook provides that an applicant's nomination "must be initiated by the candidate's department head," and nominations "must be endorsed by the head of the nominee's department or the chairperson of the nominee's program." Here, Clark, as the department head, had to make the initial determination to initiate the graduate faculty process. He did not initiate the process and thus the graduate faculty was not required to submit a written evaluation of Plaintiff.

Plaintiff argues that Clark did not previously tell her that he had the authority to initiate the process but instead just explained the criteria and that the graduate faculty would evaluate her qualifications. It appears as though she contends that Clark does not have the ability to make the

---

[66] *Plotke*, 405 F.3d at 1101.

initial determination.  Yet, the written policy speaks for itself, and it states that the department head must initiate the application process.  Clark's email summary of the process to Plaintiff does not change the Graduate Faculty's written handbook procedures.  Here, Defendant followed its written procedures.  Thus, Plaintiff's contention that there is an inference of discrimination because Clark did *not* follow Defendant's written procedures is belied by the record and cannot provide an inference of discrimination.

To the extent that Clark's failure to initiate the graduate faculty process could constitute the inference of gender discrimination, Plaintiff identifies no other evidence of gender discrimination animus by Clark.  Clark provides evidence that he did not initiate the process because he did not think that Plaintiff was qualified to be part of the graduate faculty.  Plaintiff does not adequately controvert this evidence.  She simply claims that Clark is not qualified to make the determination of whether she is qualified.  Plaintiff does not identify any gender-related statements made by Clark.  As will be discussed below, Plaintiff does not identify any other similarly-situated individuals outside of her protected class that Clark treated better than her.

As to Plaintiff's second contention, she argues that Clark supported the admission of three male faculty members to the graduate faculty which indicates a discriminatory animus toward her on the basis of gender.  These individuals, however, are not similarly situated to Plaintiff.  All three of these faculty members were hired into tenure-track positions after a competitive national or international search. The Graduate Faculty's written procedures distinguish between tenured faculty members and other candidates.  Indeed, the written procedure states that "[t]he Graduate Faculty assumes that the University's procedures for tenuring faculty members and appointing new faculty to tenure-earning positions are sufficient to

identify qualified members of the Graduate Faculty."  The written procedure also does not require that the nomination be endorsed by a department head.  Thus, the individuals are not similarly situated to Plaintiff, and these circumstances cannot be evidence of discriminatory animus on behalf of Defendant.

Defendant claims that the evidence shows that Clark also refused to initiate the graduate faculty process for a similarly-situated male, Dr. Raad Al-Ani, because Clark believed that he lacked the necessary qualifications.  Plaintiff takes issue with the comparison to Al-Ani.  She argues that he is not comparable to her because Al-Ani lacked the basic prerequisite of being published within the past five years, and she satisfied this prerequisite.  Although Plaintiff satisfied the *minimum* prerequisites, Clark still believed that both Plaintiff and Al-Ani did not have the necessary qualifications for graduate faculty.  Individuals do not need to be identically situated but instead must be similarly situated.

In addition, Plaintiff claims that Al-Ani is not similarly situated because he did not submit a formal application (like she did) but instead simply inquired about the position.  This distinction is artificial. Although Plaintiff categorizes her application to the graduate faculty as "formal," the Court does not.  The graduate faculty admission process is formally initiated when the department head initiates it.  In this case, Clark did not start the process.[67]  Thus, Plaintiff did not submit a "formal" application to the graduate faculty.[68]  Accordingly, Defendant provides some evidence that it did not process a similarly-situated male's request for graduate faculty status.

---

[67] As noted above, Plaintiff does not identify any circumstances demonstrating that Clark's decision to not initiate the process was based on Plaintiff's gender.

[68] Although Plaintiff may have submitted an application form, copies of her published papers, and her CV, the nomination process must be initiated by the department head.

Even if Defendant's proposed comparator is not similarly-situated to Plaintiff, this fact would not help Plaintiff demonstrate an inference of discrimination.  Taking issue with one of Defendant's proposed comparators is insufficient to demonstrate gender discrimination.  Plaintiff needs to direct the Court to *some evidence* that the circumstances around Defendant's refusal to initiate the graduate faculty process give rise to an inference of gender discrimination.  Plaintiff fails to do so.  She fails to identify any discriminatory gender-based comments or actions.  She fails to identify any preferential treatment given to similarly-situated male employees.  Plaintiff simply offers speculation that gender discrimination occurred.  Thus, Plaintiff cannot establish a prima facie case of gender discrimination with regard to her graduate faculty claim.

b. *Legitimate, nondiscriminatory reason*

Even if Plaintiff could establish a prima facie case, Defendant articulates a legitimate, nondiscriminatory reason for not initiating Plaintiff's application for graduate faculty status. Defendant need not "litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion."[69]  Instead, Defendant needs only to " 'explain its actions against the plaintiff in terms that are not facially prohibited by Title VII.' "[70]

Here, Defendant states that it did not initiate the graduate faculty process for Plaintiff because Clark believed that Plaintiff lacked academic qualifications and her lack of a research program indicated that she would not make significant contributions to the graduate faculty. These reasons are gender-neutral, nondiscriminatory reasons.  Thus, Defendant meets its burden.

---

[69] *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1224 (10th Cir. 2007) (quoting *EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992)).

[70] *Id.* (quoting *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000)).

### c. Pretext

Plaintiff must now present sufficient evidence for a jury to reasonably conclude that Defendant's gender-neutral reason for dismissal is merely a pretext concealing intentional gender discrimination. Evidence revealing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation for the termination may support an inference of pretext.[71]   A plaintiff typically employs three different methods to demonstrate pretext:

> (1) "evidence that the defendant's stated reason for the adverse employment action was false"; (2) "evidence that the defendant acted contrary to a written . . . policy prescribing the action to be taken by the defendant under the circumstances"; or (3) "evidence that the defendant acted contrary to an unwritten policy or contrary to [the employer's] practice when making the adverse employment decision affecting the plaintiff."[72]

Regardless of the method that the plaintiff chooses, the Court must view " 'the facts as they appear to the person making the decision to terminate.' "[73]   In addition, the Court must not second-guess business judgments made in good faith.[74]

Plaintiff relies primarily upon the same evidence for pretext as the evidence she relied upon to support an inference of discrimination in her prima facie case. As noted above, this evidence is insufficient to permit an inference of gender discrimination. Plaintiff does assert one additional pretext argument. She claims that a jury could disbelieve Clark's proffered reason that he did not initiate the graduate faculty process because she was not qualified. Plaintiff

---

[71] *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014) (citation omitted).

[72] *Id.* (quoting *Kendrick v. Penske Transp. Servs. Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).

[73] *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 948 (10th Cir. 2011) (quoting *Kendrick*, 220 F.3d at 1231).

[74] *Id.*

contends that Clark's reason is unbelievable because Clark himself is unqualified to make the decision regarding her qualifications because he has done no work in the field of structural geology.  "In determining whether the proffered reason for a decision was pretext, [the Court] examine[s] the facts as they appear *to the person making the decision*; [the Court does] not look to the plaintiff's subjective evaluation of the situation."[75]  Plaintiff does not adequately dispute that Clark believes that Plaintiff is unqualified.  Plaintiff does not point out such inconsistencies or incoherencies in Defendant's articulated reason to render it unbelievable.  Thus, even if Plaintiff could establish a prima facie case, she cannot demonstrate pretext with regard to her claim of discrimination regarding graduate faculty status.

In sum, Plaintiff fails to point this Court to any question of fact as to any evidence that would demonstrate any indicia of gender discrimination on behalf of Defendant.

**IT IS ACCORDINGLY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 28) is hereby **GRANTED**.

**IT IS SO ORDERED**.

Dated this 6th day of January, 2016.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[75] *C.R. England,* 644 F.3d at 1044 (internal quotation marks and citations omitted).

-32-